FILED 11 MAR 18 10:34 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HENRY BLAIR,

Petitioner,

v.

MARK NOOTH,

Respondent.

Civil No. 08-1502-PA

OPINION AND ORDER

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

Attorney for Petitioner

John R. Kroger
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

Attorneys for Respondent

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his underlying convictions for Rape and Sexual Abuse. For the reasons that follow, the Petition for Writ of Habeas Corpus (#3) is denied.

**BACKGROUND**

On October 3, 2003, a Harney County jury convicted petitioner of four counts of Sexual Abuse in the First Degree and two counts of Rape in the First Degree for crimes he committed against his girlfriend's daughter. As a result, the trial court sentenced petitioner to prison terms totaling 190 months and a period of post-prison supervision. Respondent's Exhibit 101.

Petitioner opted to take a direct appeal. Although he had retained counsel for his criminal trial, he sought appointed counsel for his direct appeal and a transcript at state expense. A state appellate public defender, Louis Miles, sent petitioner a financial affidavit to fill out, and Miles also filed a notice of appeal on petitioner's behalf. Respondent's Exhibit 107.

Petitioner failed to properly complete his affidavit of indigence, stating that he owned real property but not listing its estimated valuation. Petitioner's Exhibit C. Based upon the incomplete status of petitioner's affidavit of indigence, and because prior affidavits had shown him not to be indigent, the trial court denied his request for appointment of counsel and for

a state-funded transcript for appeal. Petitioner's Exhibit D; Petitioner's Exhibit F.

Petitioner subsequently filed a second affidavit of indigence in which he stated that the real property he owned was worth $300,000. The trial court denied this application as well, "based on [petitioner's] first affidavit . . . and on the court's knowledge of [his] previous attempts to obtain court-appointed **trial** counsel." Respondent's Exhibit K (bold added).

On December 18, 2003, the Oregon Court of Appeals sent a notice to Miles informing him that petitioner appeared to be in default for failure to serve and file a transcript which was due on December 5, 2003. The court notified Miles that the appeal would be dismissed for want of prosecution unless good cause could be shown within 14 days. Respondent's Exhibit 108. As a result, on December 23, 2003, Miles wrote petitioner a letter informing him of this decision and enclosing another affidavit of indigence form for petitioner to fill out completely and return to him. Miles further advised petitioner that "[t]he court reporter will not begin work on the transcripts until the court appoints an attorney, or until you retain one." Petitioner's Exhibit G. It is unclear whether petitioner ever filled out this third affidavit, and it does not appear to have been filed with the trial court.

On January 2, 2004, Miles again wrote petitioner advising him that his appeal was in default and would be dismissed unless the

trial court were to grant a motion for extension of time which Miles had prepared on petitioner's behalf. Petitioner's Exhibit H. Miles also provided a fourth affidavit of indigence form for petitioner to fill out, and advised him as follows:

> If your real property cannot be liquidated or mortgaged for some reason, please note the reason on the affidavit form. An affidavit form is also enclosed. If the trial court does not grant the motions for counsel and state-paid transcript by the time the transcript is due, the appeal will be dismissed.

*Id.*

On January 21, 2004, petitioner filled out another financial affidavit listing the real property he owned in Princeton as valued at $300,000, and had that document notarized on February 10, 2004. Petitioner's Exhibit I. In the meantime, Miles filled out two motions seeking relief from petitioner's default, and additional time to file the documents needed to process the appeal. Petitioner's Exhibits J & M. There is no indication on OJIN that these documents were ever filed, but Miles informed petitioner that the trial court had denied these motions. Petitioner's Exhibit H.

When Miles received petitioner's third affidavit of indigence, he sent a letter to petitioner dated February 18, 2004 containing the following:

> We have received your affidavit of indigence that was notarized on February 10, 2004. There is nothing in this affidavit that was not included in your first affidavit, except for the addition of the dollar amount of the value of your real estate. This information is not sufficient to convince the trial court to grant our motion. In fact, it confirms the court's decisions to deny the

> previous two motions. Therefore, I will not file a third motion for appointment and transcripts.

*Id.*

In the meantime, on February 14, 2004, the Oregon Court of Appeals dismissed petitioner's case for failure to file the transcript. Respondent's Exhibit 109.

In November 2004, petitioner's daughter paid for a copy of his trial transcript, and she subsequently retained an attorney to assist him in applying for post-conviction relief ("PCR"). With the assistance of retained counsel, petitioner filed his PCR Petition in the Malheur County Circuit Court on September 5, 2005, which he amended on May 1, 2006. Petitioner's Exhibit L; Respondent's Exhibit 110.

The PCR trial court denied relief on petitioner's claims. Respondent's Exhibit 119. The Oregon Court of Appeals affirmed the PCR trial court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 128 & 129. Petitioner's Appellate Judgment was issued on October 30, 2008 thereby ending his state collateral review. Respondent's Exhibit 129.

Petitioner filed this 28 U.S.C. § 2254 habeas corpus action approximately two months later on December 29, 2008. The parties agree that petitioner failed to timely file this action under the Anti-terrorism and Effective Death Penalty Act's one-year statute of limitations, but petitioner maintains that the court should

nevertheless consider the merits of his claims because he is entitled to statutory and equitable tolling.

**DISCUSSION**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted on April 24, 1996. AEDPA provides that a one-year statute of limitations applies to federal habeas corpus actions filed by state prisoners. The one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1).

Equitable tolling is available to toll AEDPA's statute of limitations. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A litigant seeking to invoke equitable tolling must establish: (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance prevented him from timely filing his petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 418

(2005). A petitioner who fails to file a timely petition due to his own lack of diligence is not entitled to equitable tolling. *Tillema v. Long*, 253 F.3d 494, 504 (9th Cir. 2001). Petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

In this case, petitioner argues that the criminal trial court's decision that he was not indigent was erroneous, and thus constitutes a state-created impediment to his timely filing of his federal habeas action because he was not able to secure a copy of his trial transcript. He asserts that the triggering date for AEDPA's one-year statute of limitations should be delayed until that state impediment was removed and, in the alternative, he is entitled to equitable tolling.

The Harney County Circuit Court provided two bases to reject petitioner's application for indigent status. First, it repeatedly found that petitioner failed to file a completed affidavit of indigence. Second, it determined that petitioner was not indigent based on the information he provided in his affidavits of indigence. These state court factual findings are entitled to a presumption of correctness absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(2). Petitioner does not challenge the trial court's factual finding that his affidavits of indigence were incomplete. While he does argue that his wealth was

not liquid at the time he needed an appellate attorney, he does not allege that he was actually indigent.

There is no clear and convincing evidence before the court that petitioner was, in fact, indigent where he owned a 2,000 acre ranch which he valued at $300,000 and apparently owned a strip club which was not disclosed on his affidavit of indigence. Petitioner's Exhibit I; Respondent's Exhibit 118, p. 4. Accepting the criminal trial court's factual findings as true, petitioner was not entitled to indigent status, and therefore was properly denied a trial transcript provided at state expense. As a result, petitioner is not entitled to equitable tolling or a more favorable triggering date of AEDPA's statute of limitations.

Even if petitioner were improperly denied a transcript, a transcript is not critical to the timely filing of a federal habeas corpus action such that it constitutes an extraordinary circumstance. A transcript was no doubt needed to file petitioner's direct appeal, but such things are not required of federal habeas corpus petitioners. Similarly, while the absence of the transcript clearly affected petitioner's ability to fairly present the merits of his claims on direct appeal, fair presentation and timeliness are two distinct issues.

With respect to petitioner's diligence in timely filing this federal habeas case, petitioner still had a full year in which to file this at the conclusion of his direct appeal despite not

possessing a transcript. In fact, petitioner sold real property in April and May of 2004, not long after AEDPA's statute of limitations began to run following the conclusion of his direct appeal on February 18, 2004. Petitioner's Exhibit R, pp. 1-4. He thus had between nine and ten months after the sale of his property to acquire a transcript and file a PCR action which would have tolled AEDPA's statute of limitations prior to its expiration.

It is also important to note with respect to diligence that petitioner acquired a trial transcript three months prior to the expiration of AEDPA's statute of limitations but did not file his PCR Petition for ten more months, thereby allowing AEDPA's limitation period to elapse by seven months. This demonstrates petitioner's lack of diligence and shows that he could have timely filed this habeas action had he been determined to do so.

Petitioner also faults Miles for abandoning him on appeal, and seeks to invoke equitable tolling on this basis as well. This characterization of Miles is unfair. Miles worked for the Public Defender's Office, and was never appointed to formally represent petitioner because the trial court determined that petitioner was not indigent.[1] Petitioner cannot fault Miles for not assisting him sufficiently during direct review.

---

[1] Miles nevertheless worked hard to advise petitioner regarding the procedural posture of his case and file documents in an attempt to save and, later, revive petitioner's case.

Finally, petitioner requests an evidentiary hearing on the tolling issues to express to this court the impediments he faced while trying to sell his land. "A habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964 (9th Cir. 2006) (italics removed) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003). Here, petitioner has not provided the court with any allegation that, if proven true during an evidentiary hearing, would entitle him to equitable tolling. Accordingly, the court declines to hold an evidentiary hearing, and concludes that equitable tolling is not appropriate in this case.

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#3) is DISMISSED on the basis that it is untimely. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 17 day of March, 2011.

Owen M. Panner
United States District Judge